Urbano **ELIZONDO** and Irma
Elizondo, Appellants,

v.

Thomas I. **READ** & Jacqueline K. Read
and Auditor of Marshall
County, Appellees.

No. 50A04–8902–CV–50.

Court of Appeals of Indiana,
Fourth District.

April 30, 1990.

As Corrected May 14, 1990.

Tom A. Black, Plymouth, for appellants.

William L. Fortin, Stevens Travis Fortin, Lukenbill & Burbrink, James E. Easterday, Sowinski Easterday & Ummell, Plymouth, for appellees.

MILLER, Judge.

Urbano and Irma Elizondo appeal the summary judgment entered against them in their suit against Thomas I. and Jacqueline K. Read and the Auditor of Marshall County challenging the procedures of a tax sale by which the Reads purchased the Elizondo's property. The Elizondos argue the statutory provisions that required the Auditor to send notice, by certified mail, to the Elizondo's "last known address" are constitutionally insufficient under the present circumstances. We agree and therefore reverse.

### ISSUE

The Elizondos raise several issues. But, because one is dispositive, we address it alone.

> Whether notice of the impending tax sale proceedings mailed to the Elizondo's "last known address" was constitutionally sufficient?

### FACTS

The Elizondos purchased a recreational lot at Yogi Bear Jellystone Park Camp Resort in Plymouth, Marshall County, Indiana in 1979. The deed to the property was recorded on September 25, 1979 in the office of the Marshall County Recorder.

The 1981 through 1984 real estate tax statements for this property were addressed to the Elizondos at 213 North 2nd Street, Plymouth, Indiana 46563. But, the Elizondos moved twice during this period. From 1983 through the end of 1984 their address was 310 South Plum Street, Plymouth, Indiana 46563. In late 1984, the Elizondos purchased a home at, and moved to, 1631 West Harrison Street, Plymouth, Indiana 46563.

The only address the Elizondos ever provided the Auditor's office was the first one,

the 213 North 2nd Street address. All tax statements were sent to this address and were returned and marked "Not Deliverable as Addressed–Unable to Forward." The Auditor reviewed the tax duplicates and determined the Elizondos had not paid their taxes for these years and placed the property on the list of property eligible for tax sale. A courtesy letter was sent to the Elizondos, followed by a certified mailing of the formal notice of tax sale dated July 23, 1984. The formal notice was returned to the Auditor and marked by the post office as "Unclaimed." The Auditor, complying with statutory requirements, placed notice of the tax sale in several local newspapers. The Reads purchased the property at a tax sale in August of 1984 for $85.00.

Two years later—as required by statute—in July of 1986, the Auditor mailed to the Elizondos a "Notice of Tax Sale Redemption or Issuance of Tax Deed" by certified mail to the 2nd Street address. This notice was also returned by the post office and was marked "Undeliverable as Addressed. No Forwarding Order on File." A "tax title deed" was issued to the Reads.

All notices were mailed to the 213 North 2nd Street address taken from the tax duplicate record. The Elizondos failed to notify the Auditor of their new addresses in Plymouth. However, at the time of the preparation of the tax sale notices in 1984 there was available to the Auditor personal property records which indicated that a Urbano Elizondo resided at 310 South Plum Street, Plymouth, Indiana. In 1986, at the time of the forwarding of the notice of redemption, the Auditor's office maintained a real estate tax file and an alphabetized real estate card file which contained a listing for the Elizondos. Also from 1983 to 1986, the Elizondos were listed in the phone book at 310 South Plum Street for 1983 and 1984, and at 1631 West Harrison Street for 1985 and 1986.

## DECISION

■ IND.CODE § 6–1.1–24–4 prescribes how notice is to be provided to the owners of property subject to a tax sale. It provides:

> (a) In addition to the notice required by section 3 of this chapter [posting and publishing], the county auditor shall send a notice of the sale by certified mail to the owner or owners of the real property at their *last known address*. (pertinent part only; emphasis ours).

The Elizondos argue that because their correct address was readily ascertainable—within the Auditor's office itself—notice sent to their "last known address" is inadequate. They assert that once the post office returned the mailings, the Auditor had an affirmative duty to use reasonable diligence to ascertain their current address. We agree.

Prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865. Notice is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met. *Id.* The key focus is the reasonableness of the means chosen by the State. *Id.* Whether a particular method of notice is reasonable depends on the outcome of the balance between the interest of the State and the individual interest sought to be protected by the Fourteenth Amendment. *Id.* It is the primary responsibility of the State to strike this balance and the balance struck by the State will be upset only when the State strikes the balance in an irrational manner. *Greene v. Lindsey* (1982), 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249.

In *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180, the Supreme Court held Indiana's statutory notice provision for impending tax sales was constitutionally inadequate because it failed to provide notice to

mortgagees.[1] The Court, speaking through Justice Marshall, held:

> Notice by mail or *other means as certain to ensure actual notice is a minimum* constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

462 U.S. at 801, 103 S.Ct. at 2713 (emphasis added).

The Court assumed the mortgagee's address could have been ascertained by reasonably diligent efforts. It noted the mortgage was on file in the Recorder's office and, even though the proper mailing address was not listed on the mortgage, a letter sent to the address on the mortgage would probably have provided actual notice. It suggested that the State is required to make at least some effort to discover the identity and whereabouts of a mortgagee whose identity is not in the public record. *Id.* 462 U.S. at 806, 103 S.Ct. at 2715 (dissenting opinion's interpretation of the majority opinion).[2] In two recent decisions this court held that "after *Mennonite* a mortgagee is required to receive *actual notice* of a tax sale unless the mortgagee's address is not *reasonably identifiable*." *Reeder & Associates v. Locker* (1989), Ind. App., 542 N.E.2d 1371, 1373 (emphasis ours); *Miller Reeder Co. v. Farmers State Bank of Wyatt* (1989), Ind.App., 545 N.E.2d 593.

■ Although *Mennonite, Reeder* and *Miller Reeder* all concern notice to a mortgagee, the language of those cases indicate that due process requires the auditor to provide actual notice to any party whose

address is reasonably ascertainable. In *Holland v. King* (1986), Ind.App., 500 N.E.2d 1229, we held I.C. § 6–1.1–24–4, requires notice to the property owner at the last known address, constitutionally sufficient; however, the facts in the present case are distinguishable from *Holland.* In *Holland,* notices sent by the Auditor were returned because the property owner, Holland, had moved without providing the Auditor with a forwarding address. Holland first moved to New Jersey and had provided the Auditor with that address. Then he moved to Illinois. All statements and notices were sent to the New Jersey address. One such piece of mail was forwarded to Holland's new Illinois address by the post office—the post office forwarded his mail to him for a year after he moved. Subsequent mailings were returned to the Auditor. Holland argued the Auditor had failed to take any reasonable routine business steps to correct the improperly addressed notice, to ascertain his whereabouts, or to ascertain a reasonable method of informing Holland of the impending tax sale. Holland made no showing that his Illinois address was reasonably ascertainable or could have been ascertained by reasonably diligent efforts.

In the present case, the Elizondos correct address was on file in the Auditor's office. They still resided in Plymouth. *Mennonite* places an affirmative obligation upon the State to—minimally—check the public records to ascertain the correct address of any party whose property interests are to be adversely affected by tax sale proceedings.[3] "[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation."

---

1. IND.CODE § 6–1.1–24–4.2 (1982) was amended in 1986 and repealed by P.L. 83–1989, Sec. 18, effective May 5, 1989. This statute required notice to the mortgagee only when the mortgagee made a request on forms available in the auditor's office.

2. The dissent by Justice O'Connor (joined by Justice Powell and Justice Rehnquist) criticized the majority opinion. It argued the mortgagee should have been charged with the responsibility of protecting its own interests. It also argued that the requirement placed upon the State to exercise "reasonable efforts" to ascertain the identity and location of any party with a legally

protected interest would be unduly burdensome because it would require, in addition to mailing notice, someone to check the records and ascertain with respect to each delinquent taxpayer whether there is a mortgagee, and whether there is a dependable mailing address.

3. *See also, Schroeder v. New York City,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), publication in a newspaper and posted notices inadequate to notify property owner of condemnation proceedings when his name and address were readily ascertainable from both *deed records* and *tax rolls; Mennonite, supra,* 462 U.S. at 796–97, 103 S.Ct. at 2710–11 (footnote 3), where

*Mennonite,* 462 U.S. at 801, 103 S.Ct. at 2713. Therefore, a certified mailing to the property owner's "last known address" as required by I.C. § 6–1.1–24–4 is constitutionally inadequate where, as here, the mail is returned by the post office and the correct, current address is available to the Auditor in its own records. The certified mailing in this case failed to provide notice reasonably calculated, under all the circumstances, to apprise the Elizondos of the pendency of the tax sale as required by *Mullane, supra.*[4]

Therefore, we reverse.

HOFFMAN, P.J., and CONOVER, J., concur.

the majority observed that, "Beginning with *Mullane* . . . . [o]ur cases have required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only *in personam* actions."

4. In *Gossett v. Auburn National Bank of Auburn* (1987), Ind.App., 514 N.E.2d 309, the procedures employed by the Marion County Auditor were described:

"When a deed notice is returned, the auditor first checks to determine if the address to which the notice was mailed is the correct one in the property system. If so, the phone book, the criss-cross, the computer system, and the property system are all checked to determine if that address is the correct one. If no reason can be found to re-mail the notice, it is placed in the auditor's file, as was done in this case."

*Id.* at 311–312.

As appellant's counsel points out in his brief, the administrative burden upon the Auditor for such additional effort to ascertain the address would be minimal. In 1987 in Marshall County there were 13 tax sales conducted and in other years, as many as 50 would be conducted. Normal experience was that 20–25% of the certified mailing notices were returned. Simple arithmetic would indicate that in any given year, depending upon the number of tax sales, 3–12 returned certified mailings would have to be checked for a more recent or different address. That additional effort with that small number of returned certified mailings can hardly be said to be burdensome.