Urbano ELIZONDO and Irma Elizondo, Appellants, (Plaintiffs below)

v.

Thomas I. READ and Jacqueline K. Read, and Auditor of Marshall County, 1st Source Bank of South Bend f/k/a First Bank and Trust, Appellees. (Defendants below)

No. 50S04–9203–CV–189.

Supreme Court of Indiana.

March 23, 1992.

Tom A. Black, Plymouth, for the Elizondos.

William L. Fortin, Stevens, Travis, Fortin, Lukenbill & Burbrink, Plymouth, for the Reads.

James E. Easterday, Sowinski, Easterday & Ummel, Plymouth, for Auditor, Marshall County.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

The Auditor of Marshall County and Thomas and Jacqueline Read, tax sale purchasers, petition this Court to accept transfer after the Court of Appeals reversed the trial court's entry of summary judgment against Urbano and Irma Elizondo. *Elizondo v. Read* (1990), Ind.App., 553 N.E.2d 849, on reh'g. 556 N.E.2d 959. The Court of Appeals' decision effectively invalidated a tax sale of property owned by the Elizondos. The question squarely presented by the petition to transfer is whether the notice of tax sale utilized by the Auditor of Marshall County ("Auditor") was unconstitutionally defective. We accept transfer to answer this question.

The Elizondos purchased a recreational lot at Yogi Bear Jellystone Park camp resort in Plymouth, Marshall County, Indiana, in 1979. The deed was properly recorded with the Marshall County recorder's office in September of 1979. At the time the Elizondos purchased the lot, they executed a real estate mortgage with First Source Bank ("the Bank") acting as mortgagee. From 1981 to 1984, the real estate tax statements for the property were addressed to the Elizondos at 213 North Second Street, Plymouth, Indiana. During this period, the Elizondos moved twice. From 1983 to 1984, they resided at 310 South Plum Street, Plymouth, Indiana. In 1984, they purchased a new residence and relocated again, moving to 1631 West Harrison, Plymouth, Indiana.

All notices sent to the Elizondos by the Auditor were sent to the 213 North Second Street address. Tax statements sent to this address were returned marked "Unclaimed" or "Undeliverable as addressed. No forwarding order on file." A review of the tax duplicate records first revealed that the Elizondos were in arrears and, thus, their property was eligible for tax sale.

A courtesy letter was sent, followed by a certified mailing of the formal notice of tax sale, dated July 23, 1984. This notice was returned to the Auditor stamped "Unclaimed." In compliance with statutory criteria, a notice of tax sale was placed in several local newspapers. The Reads purchased the property at a tax sale in August of 1984 for $85.

Two years later, in compliance with statute, the Auditor sent the Elizondos a "notice of tax sale redemption or issuance of tax deed" by certified mail to the Second Street address. The notice was returned to the Auditor marked "Undeliverable as addressed. No forwarding order on file." A tax title deed was issued to the Reads. The Elizondos failed to provide any change of address notice to the Auditor's office. In 1984, at the time the tax sale notices were mailed, the Auditor had available personal property records indicating that Urbano Elizondo resided at 310 South Plum

Street. In 1986, at the time of the forwarding of the notice of redemption, the Auditor's office maintained a real estate tax file and an alphabetized real estate card file containing a listing for the Elizondos. Also, the Elizondos were listed in the phone directory at the proper address during the time period in question.

At the time the Auditor put the property up for sale, the Bank's mortgage existed as a valid lien on the property. In July of 1984, when the tax sale notice was mailed, there existed no statutory requirement that the auditor send notice to any party with a substantial interest in the property unless that party complied with the requirements of *Ind. Code* § 6-1.1-24-4.2. This section provided that any party wishing to receive notice must annually file such request with the auditor and pay a small fee. The Bank did not file such a request or pay the fee and it did not receive notice.

The Elizondos brought suit against the Auditor and the Reads. The trial court granted summary judgment in favor of the Reads and the Auditor. The Court of Appeals reversed, holding that the statutory provisions requiring the auditor to send notice by certified mail to the Elizondos' "last known address" are constitutionally insufficient with regard to the circumstances of the case.

In order to decide the constitutional question presented by the facts of this case, we must discuss and decide two separate issues of notice. The first addresses notice to the Elizondos' mortgagee, First Source Bank. The second concerns the notice given to the Elizondos themselves.

### I. *Notice to the Mortgagee*

In July of 1984, when the Auditor issued the notice of tax sale, *Ind. Code* § 6-1.1-24-4.2 required the county auditor to send notice of sale to any mortgagee of real property subject to sale if the mortgagee annually, on a form provided by the State Board of Accounts, requested such notice and agreed to pay a fee to the county auditor to cover the costs of sending the notice.[1] It is uncontested that First Source

---

1. As the Elizondos point out, in March of 1986,      approximately five months prior to the issuance

Bank did not take any action to request notice, including the filing of the necessary request form. Nonetheless, the Elizondos argue that the Auditor's failure to search the public records—in this case the recorded mortgages—led to a deprivation of the mortgagee's constitutional right to be notified of the tax sale.

As support for this argument, the Elizondos point to *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180. The Mennonite Board of Missions ("MBM") took a mortgage as a security interest against a loan made to Alfred Jean Moore. The mortgage was recorded in the Elkhart County recorder's office in 1973. When Moore defaulted on property tax payments, the auditor placed the property up for tax sale.

At the time of the sale, this State did not have any provision for notification by mail or personal service to mortgagees that the property in which they held an interest would be sold. The U.S. Supreme Court's majority opinion notes that § 6–1.1–24–4.2, the statute applicable to our case, was added in 1980. Because the events in *Mennonite* occurred before this addition, the Court expressly declined to examine the constitutionality of the statute.

The Court in *Mennonite* held that a mortgagee has a legally-protected interest and is, thus, "entitled to notice reasonably calculated to appraise him of a pending tax sale." 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187. The Court said:

> When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifi-

able, constructive notice alone does not satisfy the mandate of *Mullane*.

*Id.* The rule established in *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, states that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657, 94 L.Ed. at 873. Notice is deemed constitutionally adequate when "the practicalities and peculiarities of the case ... are reasonably met." *Id.* The issue of reasonableness of the notice given turns on the means chosen by the State. The Supreme Court has declined to create a formula for reaching the proper balance between these interests. "It is not our responsibility to prescribe the form of service that the [state] should adopt." *Greene v. Lindsey* (1982), 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1878, 72 L.Ed.2d 249, 257. *See also Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 872. "[N]otice required will vary with circumstances and conditions." *Walker v. City of Hutchinson* (1956), 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178, 182.

By enacting *Ind.Code* § 6–1.1–24–4.2, the State sought to establish a procedure of notification that balanced both the interests of the State and the interests of the pertinent class, in this case mortgagees. The procedure protects the State's interest in receiving taxes while relieving it of the sometimes tremendous administrative burden of checking all public records to ascertain whether any mortgages have been taken on the property, whether these mortgag-

---

of the notice of tax sale redemption or the issuance of deed, *Ind.Code* § 6–1.1–24–4.2 was amended to say only that the county auditor should send notice of sale to all persons having a substantial property interest of public record. There was no requirement for a request of such notice. This amendment, however, came into effect one year and seven months after the sale of the property. Both the original and the amended statute deal expressly with only notice of sale, and not notice of redemption or issuance of deed. *Ind.Code* § 6–1.1–25–6 addresses what notice must be sent to a former owner before the execution and delivery of a tax deed. There is no separate statute dictating that a mortgagee or any other substantial interest-holder should receive notice of redemption or of issuance of the tax deed. Rather, it is only necessary that a mortgagee be notified of a pending tax sale. Notably, *Ind.Code* § 6–1.1–24–4.2 has been repealed entirely. P.L. 83–1989, § 18, effective May 5, 1989.

es are viable, and whether the address on the mortgages is dependable. The interest-holder will be certain to receive notice and take whatever action deemed appropriate by simply filing the necessary form in the auditor's office.

The U.S. Supreme Court's line of opinions addressing the issue of notice has never disregarded a party's ability to take steps to protect itself. Rather, the Court has considered the interest-holder's ability to take reasonable steps to protect his interest as a crucial aspect of the balancing test. As the dissent in *Mennonite* notes, these decisions holding constructive notice insufficient involved circumstances where the property owner could not easily learn of the state's action threatening his interest. *Mennonite*, 462 U.S. at 807, 103 S.Ct. at 2719, 77 L.Ed.2d at 193. *See also Mullane*, 339 U.S. at 316, 70 S.Ct. at 658, 94 L.Ed. at 874.

Such is not true in the instant case, however. The interest-holder needed only to complete a simple form to insure notice. The fact that the interest-holder chose not to avail itself of this method of protecting its interest is not sufficient grounds to demand that the State be required to conduct a more burdensome, costly search. We cannot say that the auditor's failure to go outside the prescribed statutory bounds resulted in a constitutional deprivation of due process.

## II. *Notice to Property Owners*

■ The second notice issue which must be addressed in this case is whether notice to the Elizondos themselves was sufficient. *Ind.Code* § 6–1.1–24–4 requires that the auditor send notice of sale by certified mail to the owners of real property at their last known address. Specifically, as the Elizondos argued in their brief to the Court of Appeals, at the time the notice of redemption or issuance of deed notice was sent and subsequently returned to the Auditor, the Auditor had knowledge, from its own records, of a different address for the Elizondos.

At the time the Elizondos purchased the property in 1979, they resided at 213 North Second Street, Plymouth, Indiana. All statements sent from the Auditor's office to the Elizondos were sent to this address. It is uncontested that the Elizondos made no effort to update their address with the Auditor's office. The Auditor, however, had available, in his own records, several listings for the Elizondos. The 1982 and 1983 personal property tax records, which the Auditor used to send the Elizondos their personal property tax statements, contained the 310 South Plum address, a more recent address than 213 North Second Street. The Auditor's office also maintained in the Auditor's office real estate transfer cards that could have been used to determine a different address to send out the notices.

■ Like information in possession of other public officials, knowledge of information contained in records maintained by a county auditor may be imputed to the auditor. This means that the Auditor will be considered to have been aware of any address for the Elizondos that is contained in the auditor's own records to the extent that the alternate listing linked the persons therein to the property upon which taxes were delinquent. This also suggests, however, that the auditor does not have knowledge of, nor should be required to seek knowledge of, information contained in records or documents not routinely maintained by and within the auditor's office. For example, contrary to the Elizondos' argument, the auditor should not be required to resort to the most recent telephone directories to ascertain a different address, nor should the auditor be required to search the records of other offices such as the recorder or the court clerk. All that is required is that the auditor send notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office.

Here, although the Auditor's office maintained several types of records, and different addresses for the Elizondo's could be found within these listings, we are unable to discern from the trial record whether any of the alternate listings linked the Eli-

zondos to the property in question. It is reasonable to require the auditor to search the records of his own office for other possible addresses upon the receipt of an undelivered notice. It is not, however, reasonable to require the auditor to speculate as to whether these possible alternatives are addresses for the property owner who owes taxes on the property in question or another taxpayer with the same name. This type of confusion may not be very great when the auditor is searching for an Urbano Elizondo in Marshall County. It does pose a problem, however, when the auditor of Marion County is attempting to find an address for Mary Smith, or the auditor of Lake County is searching for a John Jones. We must, however, keep in mind that the statute which we are interpreting has statewide application.

Certainly, the auditor must ascertain from the records which he keeps and maintains any alternate addresses for the owner of the specific piece of property at issue. Due process, however, does not require the auditor to engage in speculation as would be the case when there is nothing to link alternative address to the property at issue. Because we are unable to determine from the evidence submitted at trial whether any of the records which contained an address for the Elizondos other than the original Second Street address also contained reference to the tax sale lot, we cannot say that there is a genuine issue of material fact requiring reversal of the trial court's determination that the auditor used the last known address of the persons listed as owners of the lot in sending notices.

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, and reinstate the trial court's grant of summary judgment in favor of Thomas and Jacqueline Read and the Marshall County Auditor.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents, with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion. Although Ind.Code § 6–1.1–24–4.2 (repealed 1989; *now see* § 6–1.1–24–3) was passed after the completion of the facts governing *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180, the law set forth in *Mennonite* is applicable to the facts in the case at bar.

When the State undertakes to acquire real estate because of delinquent taxes, they should be required to follow any reasonable investigation to assure that all interested parties are notified of the pending tax sale. Real estate is too valuable an asset to permit slipshod inquiry into the ownership interests in such property.

There is no question that a county auditor should not be required to search through the entire court records of the county to ascertain possible interests in real estate. However, such is not the situation in the case at bar. As correctly quoted by the majority, the United States Supreme Court in *Mennonite* held that where there is a publicly recorded mortgage, constructive notice by publication must be supplemented by notice mailed to the mortgagee.

The case at bar arose in a rural county with a relatively low population. As pointed out in the Court of Appeals opinion, *Elizondo v. Read* (1990), Ind.App., 553 N.E.2d 849, *reh'g*, 556 N.E.2d 959, if the statute is to be so strictly construed, as in the majority opinion of this Court, such construction would be unconstitutional in view of the holding in *Mennonite* as far as the mortgagee is concerned. So far as the Elizondos were concerned, the Court of Appeals correctly pointed out that their correct address was on file in the auditor's office although not in regard to the instant property. When the notice with regard to the delinquent taxes was returned to the auditor's office, it would have been a very simple operation to have ascertained the Elizondos' current address.

I believe the Court of Appeals correctly decided this case. I would therefore deny transfer.