**Clarence YODER and Leona Yoder,**
**Appellants–Plaintiffs,**

v.

**ELKHART COUNTY AUDITOR and**
**Elkhart County Treasurer,**
**Appellees–Defendants.**

**No. 20A05–9105–CV–00150.**

Court of Appeals of Indiana,
Fifth District.

April 7, 1994.

Transfer Denied July 19, 1994.

William J. Cohen, Elkhart, for appellants.

R. Gordon Lord, Craig M. Buche, Goshen, for appellees.

SHARPNACK, Chief Judge.

Clarence and Leona Yoder appeal a summary judgment entered for the Elkhart County Auditor (Auditor) and Elkhart County Treasurer (Treasurer). The Yoders present two issues for appeal, which we restate as one: whether the trial court erred in entering summary judgment. We affirm.

The Yoders owned a certain tract of real estate in Elkhart County, Indiana. As a result of tax delinquencies spanning more than two years, this real estate was scheduled to be sold at a tax sale on August 12, 1985. On or about June 28, 1985, notice of the tax sale was sent by certified mail to the Yoders at 524 E. Lincoln Avenue, Goshen, Indiana, the last known address of the Yoders associated with the subject real estate according to the records in the Auditor's office. This notice was returned to the Auditor as unclaimed. Barbara Wray, an employee in the Auditor's office, searched for another address in the R.K. Polk Goshen City Directory and found a listing for the Yoder Feed Company at the 524 E. Lincoln Avenue address. Wray sent the notice of tax sale a second time on or about July 16, 1985, to the Yoders in care of the Yoder Feed Service at 524 E. Lincoln Avenue, Goshen, Indiana, but the notice again came back unclaimed. The record reveals that the Yoders had owned and operated the Yoder Feed Service at the 524 E. Lincoln Avenue address until October, 1985, when Mr. Yoder closed the business and stopped receiving mail at that location. The Yoders did not update their mailing address with the Auditor or the post office. On August 12, 1985, the Yoders' real estate was sold to Richard Adams at a tax sale.

Approximately two years later, on or about July 14, 1987, the Auditor sent a "notice of tax sale redemption or issuance of tax deed"

to the Yoders at the 524 E. Lincoln Avenue address, which also was returned unclaimed and marked with the notation "Moved Left No Address." The real estate was not redeemed during the statutory redemption period and as a result, on August 13, 1987, a tax deed was issued to Adams. The Yoders provided the Auditor with a new address once they became aware that the tax deed was issued to Adams.

The Yoders filed a three count action to quiet title to the real estate on November 19, 1987. The Yoders sought to have the tax sale and deed set aside, arguing that the sale was invalid because they did not receive proper notice of the tax sale from the Auditor and Treasurer. Count I of their complaint was a claim seeking to quiet title, Count II was a claim for adverse possession, and Count III was a claim for damages directed at the Auditor and the Treasurer.

On July 22, 1988, the Yoders moved for summary judgment on Count I of their complaint, asking the trial court to declare the tax sale invalid. Adams also moved for summary judgment arguing that the tax sale was valid. On October 31, 1988, the court issued its decision finding that the tax sale was valid and entered summary judgment in favor of Adams. The Yoders initiated an appeal, but then settled their differences with Adams by entering into a contract to purchase real estate and a covenant not to pursue litigation. The Yoders filed a motion to dismiss the pending appeal, which this court granted on October 2, 1989. The Yoders then sought to proceed with their claim for damages under Count III against the Auditor and Treasurer.

On September 24, 1990, the Yoders filed a motion for summary judgment on the issue of liability against the Auditor and Treasurer for failing to provide adequate notice of the tax sale. The Auditor and Treasurer filed legal memoranda in opposition to the Yoders' motion for summary judgment asserting that the issue of notice adequacy had already

been concluded and that the Yoders could not relitigate it. The Auditor and Treasurer in turn sought summary judgment against the Yoders based on res judicata and collateral estoppel.

On January 21, 1991, the trial court denied the Yoders' motion for summary judgment against the Auditor and Treasurer and granted the Auditor and Treasurer's motion for summary judgment against the Yoders.[1] The Yoders initiated this appeal and thereafter sought transfer of their appeal to the Indiana Supreme Court so that their case could be decided together with other pending cases involving similar due process issues. On December 30, 1991, the Indiana Supreme Court denied the Yoders' petition to transfer and this court granted a stay pending the supreme court's decision in *Elizondo*. Following the supreme court's decision, on August 3, 1993, this court resumed consideration of the Yoders' appeal after allowing amendments of briefs.

When we review the trial court's entry of summary judgment, we are bound by the same standard as the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. The appellant has the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434. We do not weigh the evidence, but we will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mutual Insurance Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. This court may affirm the trial court's ruling on a motion for summary judgment even if such affirmation is on grounds different than those reflected in the trial court's order. *Douglass v. Irvine*

---

1. We do not determine the issue of whether res judicata and collateral estoppel prevented the Yoders from appealing the trial court's entry of summary judgment, or whether the Auditor and Treasurer are amenable to a suit for damages.

Instead, our finding that the notice given to the Yoders of the tax sale and tax redemption met constitutional standards is dispositive of the present appeal.

(1990), Ind., 549 N.E.2d 368, 371; *City of Tipton v. Baxter* (1992), Ind.App., 593 N.E.2d 1280, 1282.[2]

Indiana Code § 6–1.1–24–4 prescribes how notice is to be provided to the owners of property subject to a tax sale. It provides:

(a) Not less than twenty-one (21) days before the date of application for judgment and order for sale of real property eligible for sale, *the county auditor shall send a notice of the sale by certified mail to the owner or owners of the real property at their last known address....* Failure by an owner to receive or accept the notice required by this section does not affect the validity of the judgment and order.

I.C. § 6–1.1–24–4 (emphasis added.)

 It is well settled that before an action affecting a party's interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment proceeds, the State, at a minimum, must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865. Such notice must reasonably convey the required information to the affected party, must afford a reasonable time for that party to respond, and is constitutionally adequate when the practicalities and peculiarities of the case are reasonably met. 339 U.S. at 314–15, 70 S.Ct. at 657. The reasonableness of the notice given depends on the means chosen by the State to provide notice. *Id.* Whether notice is reasonable depends on the balance struck between the State interest involved and the constitutionally protected individual interest involved. *Id.* It is the State's responsibility to strike the proper balance between these conflicting interests. *Id.*

In their original brief, the Yoders argued that the trial court's granting of the Auditor and Treasurer's motion for summary judgment was incorrect based on *Elizondo v. Read* (1990), Ind.App., 553 N.E.2d 849, in which this court held that *"Mennonite Board of Missions v. Adams* [ (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180] places an affirmative obligation upon the State to—minimally—check the public records to ascertain the correct address of any party whose property interests are to be adversely affected by tax sale proceedings." *Elizondo,* 553 N.E.2d at 851.

In their amended brief, the Yoders argue that the Indiana Supreme Court's holding in *Elizondo v. Read* (1992), Ind., 588 N.E.2d 501, which vacated this court's decision, noted *supra,* misapplies the United States Supreme Court's holding in *Mennonite* and therefore, we should follow the *Mennonite* decision. We disagree with the Yoders' contention that these two cases are in conflict.

To better understand our decision, it is necessary to review the Indiana Supreme Court's *Elizondo* decision. The Elizondos purchased a recreational lot in Plymouth, Indiana, in 1979. *Elizondo,* 588 N.E.2d at 502. From 1981 to 1984, the real estate tax statements for the property were addressed to the Elizondos' residence at 213 North Second Street, Plymouth, Indiana. *Id.* During this period, the Elizondos moved twice. *Id.* From 1983 to 1984, they resided at 310 South Plum Street, Plymouth, Indiana. *Id.* In 1984, they purchased a new residence and relocated again, moving to 1631 West Harrison, Plymouth, Indiana. *Id.*

The Elizondos fell into arrears on property taxes on the recreational lot. *Id.* All notices sent to the Elizondos by the Marshall County Auditor were sent to the 213 North Second Street address. *Id.* Tax statements sent to this address were returned unclaimed. *Id.* The auditor sent a courtesy letter to the Elizondos, followed by a certified mailing of the formal notice of tax sale, dated July 23, 1984. *Id.* This notice was returned unclaimed. *Id.* Notice of the tax sale was placed in several newspapers and the Reads purchased the property at the tax sale. *Id.*

Two years later, the auditor sent the Elizondos a "notice of tax sale redemption or

**2.** This case was decided prior to the amendment of T.R. 56, effective January 1, 1991, which requires the parties to designate to the court all evidentiary matter on which the parties rely in either promoting or opposing the motion.

issuance of tax deed" by certified mail to the 213 North Second Street address. *Id.* The notice was returned unclaimed because the post office had no forwarding address and the Elizondos failed to provide any change of address notice to the auditor. *Id.* A tax deed was issued to the Reads. *Id.* In 1984, when the tax sale notices were mailed, the auditor had available personal property records indicating that the Elizondos resided at 310 South Plum Street. *Id.* In 1986, at the time of the forwarding of the notice of redemption, the auditor maintained a real estate tax file and an alphabetized real estate card file containing listings for the Elizondos former and current addresses. *Id.* Also, the Elizondos were listed in the phone directory at the proper address during the time period in question. *Id.*

Our supreme court held that notice to the Elizondos at their 213 North Second Street address was sufficient, writing

"[a]ll [that] is required is that the auditor send notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office."

*Id.* at 504–05.

The supreme court further stated:

"It is reasonable to require the auditor to search the records of his own office for other possible addresses upon the receipt of an undelivered notice. It is not, however, reasonable to require the auditor to speculate as to whether these possible alternatives are addresses for the property owner who owes taxes on the property in question or another taxpayer with the same name."

*Id.* at 505.

The United States Supreme Court in *Mennonite, supra,* held that when a "mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service" to satisfy the mandate of *Mullane.* 462 U.S. at 798, 103 S.Ct. at 2711. The Supreme Court further stated:

"Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable."

*Id.* at 800, 103 S.Ct. at 2712.

Contrary to the Yoders' argument, we do not find a conflict existing between the holdings in *Elizondo* and *Mennonite.* Both decisions seek to and do satisfy the mandate of *Mullane.* *Mennonite* provides that notice by mail or other means as certain to ensure actual notice is required where the name and address of any party with a liberty or property interest are reasonably ascertainable. 462 U.S. at 798, 103 S.Ct. at 2711. Notice sent "to the owner's last known address . . . of which the auditor has knowledge from its records maintained in its office" satisfies the *Mennonite* notice requirement. 588 N.E.2d at 504–05. Because the Indiana Supreme Court in *Elizondo* addressed similar issues regarding the property owner that are involved in the instant case, we rely on our supreme court's *Elizondo* decision.

The Yoders argue that if *Elizondo* is controlling, then reversal is warranted because the Auditor should have personally served them with notice since the Yoders' current residential address and the address for the tax sale property were one and the same. Whether the property and address were one and the same, however, is of no consequence. *Elizondo* states that notice is sufficient when the auditor sends "notice to the owner's last known address, that is, the address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office." 588 N.E.2d at 504. In the instant case, the Auditor had the Yoders' 524 E. Lincoln Avenue address on file in its office and it mailed notice to that address. The Yoders did not provide the Auditor with their new address and did not submit a change of address notice to the post office or otherwise arrange for the forwarding of their mail until after the tax deed was issued. The notice in this case met the *Elizondo* standard.

The Yoders further argue that reversal is warranted because a member of the Treasurer's staff helped the Auditor's staff search for the Yoders' current address, which was on file in the Treasurer's office when notice of tax sale redemption was given to the Yoders. Therefore, the Yoders contend that the Treasurer's knowledge of their current address should be imputed to the Auditor. We disagree. An auditor is not "required to resort to the most recent telephone directories to ascertain a different address, nor should the auditor be required to search the records of other offices such as the recorder or the court clerk" to find the property owner's current address. *Id.* The fact that Barbara Wray chose to search for a more current address for the Yoders with the assistance of the Treasurer's staff is inconsequential.

We find that the notice given to the Yoders of all tax proceedings satisfied the notice requirements provided in *Elizondo*.

We therefore affirm the judgment of the trial court.

AFFIRMED.

RILEY, J., concurs.

RUCKER, J., concurs in result.