Fred SHENVAR and Marshall & Saxson Construction, Inc., Appellants–Defendants,

v.

Paul L. JOHNSON, Thomas G. Mikos, and Blast Camp Recreational Games, Inc., Appellees–Plaintiffs.

No. 64A05–0004–CV–139.

Court of Appeals of Indiana.

Jan. 17, 2001.

Brian E. Hicks, Griffin, Hicks & Hicks, Indianapolis, Indiana, Attorney for Appellants.

Gordon A. Etzler, Kevin G. Kerr, Hoeppner Wagner & Evans, LLP, Valparaiso, Indiana, Attorneys for Appellees.

## OPINION

BROOK, Judge.

### Case Summary

Appellants-defendants Fred Shenvar ("Shenvar") and Marshall & Saxson Construction, Inc. ("Marshall & Saxson") (collectively, "appellants") appeal the trial court's judgment in favor of appellees-plaintiffs Paul L. Johnson ("Johnson"), Thomas G. Mikos ("Mikos"), and Blast Camp Recreational Games, Inc. ("Blast Camp") (collectively, "appellees") on their complaint for declaratory judgment to set aside a tax deed. We affirm in part and vacate in part.

### Issues

Appellants raise two issues for review, which we restate as follows:

I. Whether the trial court erred in concluding that Blast Camp was entitled to receive notice of tax deed proceedings; and

II. Whether the trial court erred in concluding that Shenvar failed to make "diligent inquiry" to determine the addresses of Johnson and Mikos for tax deed notification purposes.

### Facts and Procedural History[1]

The facts most favorable to the trial court's judgment indicate that Johnson and Mikos,[2] sole shareholders of Blast Camp, purchased approximately twenty acres of real estate in Porter County ("the Nike site").[3] On September 16, 1994, Johnson and Mikos received a warranty deed for the Nike site as tenants in common; the deed specified that tax bills were to be mailed to Johnson at "348 Main" in Hobart, Indiana. Also on this date, Johnson and Mikos obtained a mortgage on the property from Bank One Merrillville, N.A. ("Bank One"). Johnson and Mikos leased the property to Blast Camp, which had managed and operated a public recreational paintball facility on the Nike site since 1988 and maintained a retail store at 348 Main Street in Hobart.[4] Blast Camp did not publicly record its lease interest; however, a large orange advertising sign at the entrance to the Nike site facility displayed Blast Camp's name and the phone number of its Hobart store.

Sometime after September 16, 1994, Blast Camp closed its store at 348 Main Street and moved to 608 Third Street in Hobart; the store's phone number remained the same. Neither Johnson nor Mikos notified the Porter County auditor or treasurer of the address change. Because of the address change, the 1995 and 1996 Nike site property tax notices were returned to the Porter County treasurer. The property taxes were not paid, and the auditor initiated tax sale proceedings in 1997. Pursuant to Indiana Code Section 6-1.1-24-4, the auditor sent Johnson and Mikos notice of the sale via certified mail at the 348 Main Street address; the post office returned the notice as "Attempted, not deliverable." On October 9, 1997, Shenvar purchased the Nike site property at a tax sale for $18,000 plus $65 in costs and $836.17 in outstanding taxes. Shortly thereafter, Shenvar assigned his interest in the tax sale certificate to Marshall & Saxson, a real estate holding company owned by Shenvar and his wife. In April 1998, Shenvar's teenage son participated in recreational paintball at Blast Camp. In

1. We heard oral argument in this case on December 11, 2000, in Indianapolis. We commend both parties for the quality of their preparation and presentations.

2. Johnson is a resident of LaPorte, Indiana, and Mikos is a resident of Wisconsin.

3. The record indicates that the property at issue once contained a Nike missile installation.

4. Blast Camp operated a second store in Michigan City, Indiana.

June 1998, Shenvar ordered a title search of the property that revealed Johnson and Mikos's mortgage to Bank One.

On July 9, 1998, and on July 27, 1998, pursuant to Indiana Code Section 6–1.1–25–4.5, Shenvar sent tax sale redemption notices via certified mail to Johnson and Mikos at the 348 Main Street address; these notices were returned as undeliverable. On July 10, 1998, Shenvar mailed a similar notice to Bank One; Michelle Draschil signed the certified mail receipt on July 13, 1998. Pursuant to Indiana Code Section 6–1.1–25–4.5, Shenvar published notice in the *Vidette & Portage Times* once each week for three consecutive weeks in July and August 1998.

On September 10, 1998, pursuant to Indiana Code Section 6–1.1–25–4.6, Shenvar sent a tax deed petition notice via certified mail to Johnson and Mikos at 348 Main Street; neither Johnson nor Mikos received the notice. On the same date, Shenvar mailed a tax deed petition notice to Bank One, which received the notice the following day. Shenvar then published notice of his petition for a tax deed in the *Vidette & Portage Times* on September 17, 1998.[5] On October 12, 1998, Shenvar filed a petition for a tax deed with the Porter Superior Court, which ordered the auditor to issue a tax deed to the Nike site to Marshall & Saxson. The tax deed was executed on October 26, 1998, and recorded the following day. Shortly thereafter, Shenvar drove by the Nike site, obtained Blast Camp's telephone number from a sign on the property, and called Mervyn Erickson ("Erickson"), the manager of the Blast Camp store in Hobart. Shenvar stated that he was the owner of the property and offered to continue Erickson's employment as store manager.

On December 3, 1998, appellees filed a complaint for declaratory judgment to set aside the tax deed to the Nike site, as well as a petition for a temporary order to restrain Shenvar from ejecting appellees from the property. The trial court granted appellees' petition on December 30, 1998. On June 2, 1999, appellees filed a summary judgment motion, which the trial court later denied. On October 16, 1999, appellees requested special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). A bench trial was held on October 27, 1999. On December 14, 1999, the trial court issued its findings of fact and the following conclusions:

1. The statutory requirement of making "diligent inquiry" to determine the name and address of owners of public record are words in the statute [Indiana Code Section 6–1.1–25–4.5] that are not useless phrases. They are there for a purpose. The perfunctory inquiry of mailing of notices to an address when it is known that no purpose will be served does not comply with "diligent inquiry." More is required. An honest and well-directed effort should have been made by Shenvar to ascertain the names and addresses of the owners of this property. Shenvar had the knowledge and expertise of being able to do elementary detective work in this regard. Such inquiry should be as full as the circumstances as [*sic*] the particular situation will permit. Here, Shenvar's son participated in recreation facilities [*sic*] at Blast Camp. This Court does not believe it credible that Shenvar did not know recreational operations that were being conducted on that property. Nor does this Court find it credible that an investor of $18,000.00 in 20 acres of real estate in Porter County did not drive by that facility on a well-paved road to observe a posted sign prior to obtaining his Tax Deed all of which was located less

---

**5.** *See* IND.CODE § 6–1.1–25–4.6(a):

    Notice of the filing of this petition and the date on or after which the petitioner intends to make application for an order on the petition shall be given to the owner and any person with a substantial interest of public record in the tract or real property in the same manner as provided in section 4.5 of this chapter, except that only one (1) publication is required.

than 10 miles of his residence in this County. In short, this Court does not find such claimed lack of knowledge on Shenvar's part to be credible.

2. Due diligence in this case would also have dictated Shenvar to contact Bank One, the listed mortgage holder on this property, once Shenvar obtained the Lawyer's Title Report as to the real estate prior to obtaining the Tax Deed. He did not do that.

3. "Due diligence" and due inquiry would also require Shenvar to call the phone number listed on the advertising sign to ascertain the correct location of the owners of this property prior to obtaining the Tax Deed. This information was easily obtainable and would not have placed an undue burden of time or expense on him.

4. Johnson's and Mikos' contention that they thought that their mortgage holder, Bank One, was paying taxes directly (as had been done on the mortgage payments on Johnson's residence) is not unreasonable. It is not an uncommon practice with mortgage companies to pay taxes directly; hence, this was Johnson's and Mikos' answer as to why they had not paid any real estate taxes.

5. Blast Camp Recreational Games, Inc., the user of the property in question, had a use which was open and notorious which use could have easily been determined by Shenvar by a visual inspection of the property (without any trespassing); Blast Camp therefore was also entitled to a written notice of the filing of the Petition for Tax Deed which Shenvar failed to do.

In its judgment, the trial court stated that Shenvar "did not exercise due inquiry to determine the addresses and notification of Johnson, Mikos and Blast Camp and give them written notice as required by statute" and declared Shenvar's tax deed null and void.

## Discussion and Decision
### Standard of Review

■■■ Where, as here, a party has requested specific findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *In re Paternity of Winkler,* 725 N.E.2d 124, 126 (Ind.Ct.App.2000). We must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* We will reverse the judgment only if it is clearly erroneous. *Id.* "Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them." *Id.* A judgment is clearly erroneous even though there is evidence to support it if our examination of the record leaves us with the firm conviction that a mistake has been made. *Id.* "To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility." *Id.*

### I. Was Blast Camp Entitled to Notice?

■■ Appellants first contend that because Blast Camp did not have a publicly recorded interest in the Nike site, the trial court erred in concluding that Blast Camp was entitled to notice of tax deed proceedings. Indiana Code Section 6–1.1–25–4.5(a) provides that a purchaser is entitled to a tax deed to the property at issue only if the purchaser "gives notice of the sale, the date of expiration of the period of redemption, and the date on or after which a petition for the tax deed will be filed to the owner and any person with a substantial property interest of public record in the tract or real property." Section 6–1.1–25–4.6(a) provides that notice of the purchaser's filing of a petition for the tax deed "and the date on or after which the petitioner intends to make application for an

order on the petition shall be given to the owner and any person with a substantial interest of public record in the tract or real property[.]" Section 6–1.1–24–1.9 defines "substantial property interest of public record" in relevant part as "title to or interest in a tract possessed by a person and recorded in the office of a county recorder or available for public inspection in the office of a circuit court clerk no later than the hour and date the sale is scheduled to commence under this chapter."

We agree with appellants that the only parties with "substantial property interest of public record" in the Nike site were Johnson, Mikos, and Bank One, and that only these parties were entitled to notice under sections 6–1.1–25–4.5 and 4.6. Appellees' arguments focus on Blast Camp's open and obvious use of the property and the public availability of its phone number. However, the fact that Shenvar might have used Blast Camp as a source of information or even as a mailing address [6] for notifying Johnson and Mikos is not dispositive of whether Blast Camp was entitled to notice as a matter of law. Therefore, we vacate those portions of the trial court's judgment which state that Blast Camp was entitled to written notice of tax deed proceedings.

## II. Due Diligence and Notification

Appellants further contend that the trial court erred in concluding that Shenvar did not "exercise due inquiry" in notifying Johnson and Mikos of the tax deed proceedings. At trial, both parties stipulated to the propriety of the auditor's and treasurer's actions during the tax deed proceedings, but appellees challenged the sufficiency of Shenvar's efforts to comply with the notice requirements of Indiana Code Section 6–1.1–25–4.5. *See Tax Certificate Investments, Inc. v. Smethers*, 714 N.E.2d 131, 133 (Ind.1999) [hereinafter *TCI*] ("The first notice [under IND.CODE § 6–1.1–25–4.5] announces the fact of the sale, the date the redemption period will expire, and the date on or after which a tax deed petition will be filed. The second notice [under IND.CODE § 6–1.1–25–4.6] announces that the purchaser has petitioned for a tax deed.") (statutory citations omitted).

> While a tax deed creates a presumption that a tax sale and all of the steps leading to the issuance of the tax deed are proper, this presumption may be rebutted by affirmative evidence to the contrary. Moreover, title conveyed by a tax deed may be defeated if the notices were not in substantial compliance with the manner prescribed in accordance with our notice statutes, [Indiana Code Sections] 6–1.1–25–4.5 and 4.6.

*Maudlin v. Hall*, 700 N.E.2d 469, 471 (Ind. Ct.App.1998) (citing IND.CODE § 6–1.1–25–16(7)) (citation omitted).

Indiana Code Section 6–1.1–25–4.5(b) reads in relevant part as follows:

> *The purchaser* or assignee or, in a county having a consolidated city, a county having a population of more than two hundred thousand (200,000) but less than four hundred thousand (400,000), or a county where the county auditor and county treasurer have an agreement under section 4.7 of this chapter, the county auditor *shall give the notice [of the tax sale] by sending a copy of the notice*

---

6. Appellants contend that "there was no mail receptacle at the subject real estate which could allow Blast Camp, as an occupant, to receive mail. This fact can be evidenced by the photographs admitted at trial." Appellants' Brief at 15. As appellees observe, this fact was neither found by the trial court nor "established by the evidence designated in support of that fact." Appellees' Brief at 2. Appellants also baldly assert that it is against "U.S. Postal regulations to send a certified letter addressed to 'occupant' as that would violate one's right to privacy since a certified letter requires a signature from the recipient." Appellants' Brief at 15–16. Appellees correctly respond that appellants have waived this argument by failing to cite relevant authority therefor as required by Indiana Appellate Rule 8.3(A)(7). *See, e.g., McConnell v. Porter Memorial Hosp.*, 698 N.E.2d 865, 868 (Ind.Ct.App.1998), *trans. denied.*

*by certified mail to the [owner and any person with a substantial property interest of public record] at their last known addresses. However, if the address of the owner or person with a substantial property interest of public record upon diligent inquiry cannot be located by the purchaser or assignee or, in a county having a consolidated city, a county having a population of more than two hundred thousand (200,000) but less than four hundred thousand (400,000), or a county where the county auditor and county treasurer have an agreement under section 4.7 of this chapter, the county auditor, notice may be given by publication in the manner described in [Indiana Code Section] 6–1.1–22–4(b) once each week for three consecutive weeks.*

(Emphases added.) Appellants claim that Shenvar substantially complied with this section by mailing notices to Johnson and Mikos at their last known address: 348 Main Street in Hobart. The "diligent inquiry" language of section 6–1.1–25–4.5(b), appellants argue, does not require a purchaser to "perform an investigation at or near the property" to ascertain the owner's address.

Appellees respond that the "diligent inquiry" language of section 4.5 expresses the due process [7] requirement that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time

for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." *Id.* at 314–15, 70 S.Ct. 652 (citations omitted). If Shenvar's duty was merely to send notice to the last known address, appellees contend, then the "diligent inquiry" language of section 6–1.1–25–4.5(b) is without meaning. *See In re Visitation of J.P.H.*, 709 N.E.2d 44, 46 (Ind.Ct.App.1999) ("Where possible, every word [in a statute] must be given effect and meaning."). Appellees argue that after the initial notices to Johnson and Mikos were returned as undeliverable, Shenvar should have inspected the nearby Nike site,[8] contacted Bank One, or examined the local telephone directory to ascertain Johnson's and Mikos's current addresses in conformance with due process.

We have found no cases specifically addressing the "diligent inquiry" language of section 4.5 with respect to a purchaser's responsibility to determine the property owner's [9] current address for due process notification purposes. Appellants suggest that our supreme court's unanimous decision in *TCI* is dispositive of the issue before us. In *TCI*, a quitclaim deed "relinquishing all right, title and interest" of Ellen Smethers in the disputed property was not recorded after Ellen and her husband David divorced; consequently, the Smethers remained joint owners of public record. During tax deed proceedings, TCI's predecessor in interest mailed notices to "Smethers, David E. and Ellen E." that were received by David at the property address; however, David did not discuss the notices with Ellen for several months. Approximately six months after a court granted TCI a tax deed to the subject

---

7. *See* U.S. CONST. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").

8. As previously mentioned, the trial court specifically discredited Shenvar's testimony that he had not seen the Blast Camp sign at the Nike site prior to obtaining the tax deed.

9. We recognize that the notification provisions of section 4.5 also apply to "persons with substantial property interest of public record," but we shall refer only to "property owners" for simplicity's sake.

property, David and Ellen jointly sought to invalidate it.

In addressing the adequacy of TCI's notice to the Smethers, our supreme court "assume[d] without deciding that Ellen was entitled to notice." *TCI*, 714 N.E.2d at 133. The court then referred to the dictates of *Mullane* and discussed the issue of due process as follows:

We addressed the requirements of due process in the context of tax sale notice in *Elizondo v. Read,* 588 N.E.2d 501 (Ind.1992). In *Elizondo,* the county auditor sent notices of redemption and of deed issuance to the Elizondos at the address on file with the auditor's office. Because the Elizondos had moved twice, the notices were returned as unclaimed or undeliverable. After publication of notice in local newspapers in accordance with the applicable statute, the property was deeded to the tax sale buyers. Had the auditor checked personal property records, or real estate transfer cards, she could have found a current address for the Elizondos. However, the Elizondos had made no effort to update their address with the auditor's office. We held that "[a]ll that is required is notice to the owner's last known address, that is, the last address of the owner of the specific property in question of which the auditor has knowledge from records maintained in its office." Although the auditor had other addresses on file, some of which happened to be more current, we held that sending notice to the last address listed for the property at issue was sufficient.

Although the purchaser of the property rather than the county auditor was re-

sponsible for sending the notice in this case, the requirements for notice were the same. The purchasers sent notice to the recorded owners of the property, at their listed address. Had Ellen wished to receive notices at another address, she had ample opportunity to update the property records. She did not do so.[10] TCI was entitled to rely on the official property records in complying with the statutory notice requirement. It appropriately sent notices to joint owners of record at the address those owners had provided.

Indiana caselaw has for some time held the property owner accountable for ensuring that official property records reflect a correct address. In *Holland v. King,* 500 N.E.2d 1229, 1237 (Ind.Ct. App.1986), the court stated: "Our legislature intended to place the burden of notifying the county taxing authority of the taxpayer's correct address upon the taxpayer. If the county sends notice to the taxpayer's last known address as supplied by the taxpayer, and the notice reaches this address, then notice is sufficient...." The controlling statute in *Holland* did not expressly state that notice sent to the last known address was sufficient. The case here is even stronger, where the "last known address" requirement has been specifically incorporated. The conclusion that it is the taxpayer's burden to update his or her address remains consistent with the statute as revised.

*Id.* at 134 (citations and footnote omitted). The supreme court found in favor of TCI, concluding that "[a] single notice to joint

---

10. She also has not demonstrated that TCI had actual notice of her change of address at the time of either notification. David and Ellen Smethers contend that the decree dissolving their marriage, which was a public record, should have alerted TCI to the fact that Ellen was no longer residing at the property. This argument is unavailing, since TCI had no legal obligation to investigate the status of the marriage. Further, the same decree also provided that the real

estate in question was to be "set over" to David. Although we have assumed without deciding that Ellen was entitled to notice, the claim that the decree of dissolution provided TCI with adequate notice of the need for separate mailings but did not impair Ellen's entitlement to notice is questionable. If anything, it suggested that Ellen was no longer the owner.

*TCI,* 714 N.E.2d at 134 n. 3.

owners of record listed at a single address suffices under the plain language of [Indiana Code Section 6–1.1–25–4.5], as well as under the requirements of due process." *Id.* at 135.

Appellants seize on the *TCI* court's language regarding the duty of property owners to "ensur[e] that official property records reflect a correct address," but this responsibility is obviously separate from and exclusive of a purchaser's duty of diligent inquiry under section 6–1.1–25–4.5(b). Indeed, the facts of *TCI* are sufficiently distinguishable as to require a different result on due process. grounds. In that case, David Smethers received actual notice of the tax deed proceedings; under the circumstances, TCI satisfied its duty of diligent inquiry by mailing notice to his last known address. In the instant case, however, the notices Shenvar sent to Johnson's and Mikos's last known address were returned as undeliverable. Shenvar contends that a purchaser's statutory duty of diligent inquiry is fully satisfied by mailing notices to a property owner's last known address; even if more is required, he argues, he met this additional burden by ordering an independent title search,[11] inspecting public records and the local telephone directory,[12] and mailing certified notices to Bank One.

■■■■■ We disagree. The fact remains that Shenvar did not take steps "reasonably calculated, under all the circumstances" to notify Johnson and Mikos of the tax deed proceedings, such as requesting their current mailing addresses from Bank One or calling the telephone number he saw on the Blast Camp sign. As Justice Jackson observed in *Mullane*, "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315, 70 S.Ct. 652.[13] The "diligent inquiry" mentioned in section 6–1.1–25–4.5(b) must not only be given meaning, as appellees suggest, but it must also comport with the requirements of due process, "with due regard for the practicalities and peculiarities of the case." *Id.* at 314, 70 S.Ct. 652. Under the facts of this case, we agree with the trial court's conclusion that Shenvar, as the purchaser of the subject property, failed to make "diligent inquiry" to determine the addresses of property owners Johnson and Mikos.[14] Conse-

11. We note that section 6–1.1–25–4.5 does not specifically require a purchaser to conduct a title search of the subject property. Nevertheless, section 6–1.1–25–4.7 provides that a county auditor and county treasurer may enter into a mutual agreement for the county auditor to perform "[n]otification and title search under section 4.5" instead of the purchaser. Although we do not reach the question of whether a purchaser's duty of diligent inquiry requires the performance of a title search, we reiterate that section 4.5 requires a purchaser to send notice to "the owner and any person with a substantial property interest of public record in the tract or real property." ·

12. At trial, appellees introduced evidence that Blast Camp's phone number was listed in the August 1997 Portage/Valparaiso/Hobart white and yellow pages. Appellees claim that Johnson's LaPorte phone number is listed, but there is no evidence that this number is listed in the Hobart directory. Shenvar lives in Ogden Dunes in Porter County, whereas LaPorte is located in LaPorte County.

13. *See also Elizondo,* 588 N.E.2d at 505 ("Real estate is too valuable an asset to permit slipshod inquiry into the ownership interests in such property.") (Givan, J., dissenting).

14. We believe our holding today is consistent with our supreme court's holdings in both *TCI* and *Elizondo,* the latter of which concerned notices of tax deed proceedings mailed by the county auditor. We agree that "the auditor does not have knowledge of, nor should be required to seek knowledge of, information contained in records or documents not routinely maintained by and within the auditor's office." *Elizondo,* 588 N.E.2d at 504. Thus, a county auditor's duty of diligent inquiry under section 6–1.1–25–4.5(b) is confined to the records maintained in its office. Our holding does not place a more rigorous duty of inquiry on tax sale purchasers, but rather adheres to the established principle that the adequacy of due process is a fact-sensitive determination that varies from case to case. Here, Shenvar knew that Bank One

quently, Shenvar failed to provide Johnson and Mikos with adequate notice of the tax deed proceedings.

Affirmed in part and vacated in part.

SULLIVAN, J., and NAJAM, J., concur.

held a mortgage on and that Blast Camp was an occupant of the subject property, but failed to use this knowledge to make diligent inquiry as to Johnson's and Mikos's addresses.