# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KURT V. LAKER**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana



# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant-Intervenor, | ) | |
| | ) | |
| vs. | ) | No. 13A01-1304-MI-177 |
| | ) | |
| DARRELL CALHOUN and BARBARA CALHOUN, Successors to MARCUS BURGHER III, FOR ISSUANCE OF TAX DEED, | ) | |
| | ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable Kenneth L. Lopp, Judge
Cause No. 13C01-0910-MI-022

**June 25, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

This discretionary interlocutory appeal involves a mortgage foreclosure judgment holder's motion for summary judgment seeking to set aside the issuance of a tax deed for property located in Crawford County and purchased in a tax sale. The summary judgment motion was based on a challenge to the sufficiency of the pre-tax sale and post-tax sale notices to the mortgage foreclosure judgment holder. The Appellant and Appellee in this appeal were not the original parties involved in the summary judgment proceeding. Instead, they were substituted as the Intervenor and Petitioner, by order of the trial court, on the same day the trial court entered its summary judgment order.

In this appeal, Appellant/Substitute Intervenor/Mortgage Foreclosure Judgment Holder-by-Assignment, First American Title Insurance ("First American"), appeals the trial court's order denying the original intervenor/mortgage foreclosure judgment holder's—WM Specialty Mortgage, LLC ("WM Mortgage"), later known as JPMC Specialty Mortgage, LLC ("JPMC Mortgage")—motion for summary judgment, in which it sought to set aside the tax deed issued to the tax sale purchaser/original petitioner, Marcus Burgher, III ("Burgher"), for the Crawford County property that he later quitclaim deeded to Appellee/Substitute Petitioners, Darrell Calhoun ("Darrell") and Barbara Calhoun ("Barbara") (collectively, "the Calhouns").

We affirm.

## ISSUE

Whether the trial court erred by denying the mortgage foreclosure judgment holder's motion for summary judgment that sought to set aside a tax deed.

2

FACTS

The property at issue in this appeal is a 4.5-acre tract of land located at 2640 Calhoun Road in English, Indiana ("the Real Estate"). Raymond Gresham ("Gresham") owned the Real Estate and executed a note and mortgage in the amount of $50,000 with Ameriquest Mortgage Company ("Ameriquest Mortgage") on the Real Estate in 2002. An exhibit attached to the mortgage provided that the land subject to the mortgage consisted of "TWENTY (20) ACRES" in English, Indiana. (App. 93).[1]

In June 2008, Ameriquest Mortgage assigned the mortgage on the Real Estate to WM Mortgage. The assignment listed WM Mortgage's address as 10801 6th Street, #130, Rancho Cucamonga, California. On June 10, 2008, WM Mortgage filed the assignment of mortgage with the Crawford County Recorder's office. There is no indication in the record on appeal that WM Mortgage filed a request for a mortgagee's notice of a tax sale, pursuant to INDIANA CODE § 6-1.1-24-3, with the Crawford County Auditor ("the Auditor").

In 2007, Gresham stopped paying on the mortgage for the Real Estate. On June 12, 2008, WM Mortgage filed a Complaint on the Note and Real Estate Mortgage ("the

---

[1] More specifically, the mortgage exhibit described the land subject to the mortgage as:

> TWENTY (20) ACRES IN THE SOUTHEAST QUARTER OF SECTION 31 TOWNSHIP 2 SOUTH, RANGE 1 EAST AS PARTICULARLY DESCRIBED IN DEED RECORD NO. 86 AT PAGE 134 OF THE RECORDS OF THE OFFICE OF THE RECORDER OF CRAWFORD, INDIANA. SAID REAL ESTATE IS ALSO DESCRIBED AS BEING PART OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 31, TOWNSHIP 2 SOUTH, RANGE 1 EAST . . . .

(App. 93).

3

mortgage foreclosure case"), in which it sought a judgment against Gresham for the principal and interest on the mortgage, as well as various fees. WM Mortgage's complaint provided that its "principal place of business [was] in Rancho Cucamonga, California." (App. 65). The appearance form for WM Mortgage's attorney listed WM Mortgage's address as Rancho Cucamonga, California.

WM Mortgage also named the Calhouns as defendants in the mortgage foreclosure case and alleged that Gresham had conveyed his interest in "Tract II of the Real Estate" by warranty deed to the Calhouns in April 2003. (App. 68). The warranty deed attached to the complaint provided that Gresham had conveyed 15.5 acres of land to the Calhouns, who recorded the deed on April 29, 2003. WM Mortgage alleged that the Calhouns' 15.5 acres of property was subject to WM Mortgage's mortgage lien on the Real Estate. Burgher, who is an attorney, represented the Calhouns in the mortgage foreclosure case.

WM Mortgage filed two separate motions for summary judgment in the mortgage foreclosure case, one in July 2008 and the other in August 2008. Both summary judgment motions included affidavits from attorneys-in-fact for WM Mortgage, and these affiants averred that WM Mortgage's principal place of business was in Rancho Cucamonga, California.

On July 14, 2008, the trial court ordered default judgment and a decree of mortgage foreclosure against Gresham and in favor of WM Mortgage. The trial court ordered that Gresham was responsible for a personal judgment of $63,910.02 plus interest and other costs, including "advances of real estate taxes," and "any monies [WM Mortgage] [would] be compelled to expend for redemption of the Real Estate from tax

4

sale, assessments, insurance premiums and any necessary expenses to preserve and protect the [R]eal [E]state[.]" (App. 104, 188). Additionally, the trial court ordered WM Mortgage's mortgage foreclosed on "Tract I" (a 4.5 acre tract of land) and "Tract II" (a 20-acre tract of land minus the Calhouns' 15.5 acres of property), and the trial court stated that WM Mortgage's mortgage was foreclosed as a "first and prior lien[.]" (App. 105, 189). The trial court also ordered the Real Estate to be sold at a sheriff's sale and directed the proceeds of the sale to be applied to the cost of the mortgage foreclosure action, followed by the payment of property taxes on the Real Estate, and then the payment of sums due to WM Mortgage. The trial court's order did not resolve the dispute between WM Mortgage and the Calhouns regarding the 15.5 acres of land.

Apparently, a sheriff's sale was not held, and neither Gresham nor WM Mortgage paid the property taxes due on the Real Estate. Due to the delinquent property taxes, the trial court, on October 22, 2009, entered a judgment against the Real Estate and authorized the Auditor to hold a tax sale on the Real Estate. Prior to the tax sale, the Auditor sent notice of the tax sale to Gresham, as owner of the Real Estate, as required by statute.

On October 29, 2009, Burgher purchased the Real Estate at the tax sale, and the Auditor issued a certificate of sale for the Real Estate to Burgher. Based on the date of purchase, the statutory one-year redemption period ended on October 29, 2010. *See* IND. CODE § 6-1.1-25-4.

Thereafter, on July 15, 2010, Burgher sent a notice of the right of redemption ("4.5 Notice") to Gresham and WM Mortgage. Burgher's 4.5 Notice specified that the

5

redemption period would expire on October 29, 2010, and indicated that he would petition the trial court for a tax deed after that date. Prior to sending the 4.5 Notice to WM Mortgage, Burgher checked the Indiana Secretary of State's Office for a resident agent for WM Mortgage, but he did not find a listing or business address. Burgher "mailed" the 4.5 Notice to WM Mortgage at the Rancho Cucamonga, California address contained in the county records. (App. 291). The 4.5 Notice to WM Mortgage was not returned to Burgher.

The Real Estate was not redeemed within the one-year statutory redemption period. On December 27, 2010, Burgher filed a verified motion for issuance of a tax deed for the Real Estate ("tax sale case"). That same day, Burgher sent a notice of his petition for a tax deed ("4.6 Notice") to Gresham via certified mail. Burgher also sent the 4.6 Notice to WM Mortgage via certified mail at the same California address as the 4.5 Notice. The notice sent to WM Mortgage was returned to Burgher as undeliverable. Specifically, the post office stamped the following on the envelope:

> Return to Sender
> Not Deliverable as Addressed
> Unable to Forward

(App. 137, 270). Thereafter, on March 11, 2011, Burgher informed WM Mortgage's counsel from the mortgage foreclosure lawsuit that "the 4.5 acre tract with the judgment lien of WM Specialty Mortgage LLC"—or the Real Estate—had been sold at a tax sale. (App. 292).

On February 3, 2011, the trial court granted Burgher's petition and issued an order directing the Crawford County Auditor to issue a tax deed to Burgher. On February 8,

2011, the Crawford County Auditor issued Burgher a tax deed to the Real Estate. On March 22, 2011, Burgher transferred title to the Real Estate to the Calhouns via a quitclaim deed.

On April 4, 2011, WM Mortgage filed a motion to intervene in the tax sale case, in which it alleged that it was "a person with a substantial interest of public record[.]" (App. 17). That same day, WM Mortgage also filed a motion to set aside the tax sale and tax deed, in which it asserted that the tax deed should be set aside pursuant to INDIANA CODE § 6-1.1-25-16 because, "[u]pon information and belief," the required statutory notices "were not in substantial compliance with the manner prescribed[.]" (App. 41).

Burgher objected to WM Mortgage's motion to intervene, stating that he had "repeatedly requested for over a year from the attorney for WM Specialty Mortgage the name and address for the authorized agent for [WM] Specialty Mortgage." (App. 43). The trial court held a hearing on the WM Mortgage's motion to intervene and granted the motion on August 11, 2011.

During the discovery process in the tax sale case, WM Mortgage revealed that it had changed its corporate name to JPMC Mortgage in December 2008. It also indicated that JPMC Mortgage was "100% owned by JP Morgan Chase Bank N.A." (App. 278). WM Mortgage also asserted that the Rancho Cucamonga, California address was never an address for WM Mortgage and that it was, instead, the address for Citi Residential Lending, which was the loan servicing company for WM Mortgage until January 1, 2009, when WM Mortgage transferred loan servicing responsibilities to Chase Home Finance. Additionally, in its responses to a request for admission, WM Mortgage admitted that, in

7

2010, when Burgher attempted to serve his 4.5 Notice and 4.6 Notice to WM Mortgage at the California address, Citi Residential Lending was "no longer receiving mail with respect to this loan" at the Rancho Cucamonga, California address. (App. 274). The record on appeal contains no indication that WM Mortgage ever notified the county recorder or auditor about a corporate name change for WM Mortgage or a change of address for its service provider.[2]

On June 11, 2012, WM Mortgage filed a motion for summary judgment, challenging the sufficiency of Burgher's post-tax sale notices (i.e., the 4.5 Notice and 4.6 Notice). Specifically, WM Mortgage argued that: (1) Burgher had failed to provide statutory notice of the tax sale and right of redemption as required by INDIANA CODE § 6-1.1-25-4.5 because, in response to a request for production, Burgher had not produced any certified mail receipts proving that he had mailed the 4.5 Notice via *certified* mail versus sending it regular mail; and (2) although Burgher mailed the 4.6 Notice as required by INDIANA CODE § 6-1.1-25-4.6, he had violated WM Mortgage's due process rights by failing to take reasonable steps to notify WM Mortgage of the tax deed after his 4.6 Notice was returned as undeliverable.

In Burgher's response to WM Mortgage's summary judgment motion, he argued that the tax deed was valid and that the tax sale notices were in substantial compliance with statutory procedure. In his designated evidence, Burgher included an affidavit in which he averred that he had properly served the required notices to WM Mortgage at its address contained in the public records.

---

[2] In September 2011, WM Mortgage filed a notice of corporate name change in the mortgage foreclosure case. The notice did not indicate any change of address.

Thereafter, WM Mortgage filed a supplemental brief in support of its summary judgment motion and argued that the tax sale should be considered void because the Auditor failed to provide pre-tax sale notice to WM Mortgage as mortgagee.[3]

On November 27, 2012, the trial court held a summary judgment hearing. WM Mortgage admitted that the Rancho Cucamonga, California address was the proper address for Burgher to use to comply with the notice statutes. WM Mortgage stipulated that Burgher would have complied with the tax deed statutes by sending the 4.5 Notice and the 4.6 Notice, via certified mail, to WM Mortgage at its California address. WM Mortgage argued, however, that it was entitled to summary judgment because Burgher could only prove that he had mailed the 4.5 Notice but could not prove that he had mailed it via *certified* mail. WM Mortgage argued that it was also entitled to summary judgment because Burgher should have, under the principles of due process, taken additional steps once he obtained knowledge that WM Mortgage did not receive the 4.6 Notice.

That same day as the summary judgment hearing, WM Mortgage, which had become JPMC Mortgage, filed a motion to substitute parties for the intervenor and

---

[3] In support of this argument, WM Mortgage cited to this Court's opinion in *M & M Inv. Grp., LLC v. Ahlemeyer Farms, Inc.*, 972 N.E.2d 889, 890 (Ind. Ct. App. 2012), *trans. granted*, 994 N.E.2d 1108 (Ind. 2013), in which we concluded that the pre-tax sale notice statute for mortgagees, INDIANA CODE § 6-1.1-24-3, violated the Due Process Clause and held that due process required an auditor to send pre-tax sale notice to a mortgagee even if the mortgagee did not request notice of the tax sale pursuant to Indiana Code § 6-1.1-24-3(b). However, after the summary judgment proceeding below and after First American filed its brief in this appeal, our Indiana Supreme Court granted transfer, vacated and reversed our opinion, and held that "[t]he requirement found in Indiana Code § 6–1.1–24–3(b), that a mortgagee annually request, by certified mail, a copy of notice that a parcel of real property is eligible for sale under the tax sale statutes, does not violate the Fourteenth Amendment's Due Process Clause." *See M & M Inv. Grp., LLC v. Ahlemeyer Farms, Inc.*, 994 N.E.2d 1108, 1125 (Ind. 2013).

petitioner.[4]  In its motion, WM Mortgage stated that it had assigned its foreclosure judgment rights to the Real Estate to First American on November 2, 2012, and it requested that First American be substituted as named intervenor.  WM Mortgage also requested the trial court to substitute the Calhouns as the named petitioners in place of Burgher (because Burgher had sold the Real Estate to the Calhouns).  The trial court later held a hearing on the motion to substitute parties, at which the Calhouns were present and represented by Burgher as counsel.

On February 11, 2013, the trial court enter an order denying WM Mortgage's summary judgment motion.[5]  That same day, the trial court, over Burgher's objection, granted WM Mortgage's motion to substitute and ordered First American substituted as the named intervenor.  The trial court also joined the Calhouns as a party and substituted them as named petitioners in place of Burgher.  Thereafter, Burgher filed an appearance on behalf of the Calhouns.

On February 27, 2013, First American filed a motion requesting the trial court to reconsider its order denying summary judgment, which the trial court denied.  On March 13, 2013, First American filed a motion requesting the trial court to certify its order for interlocutory appeal, and the trial court granted First American's request and certified its order.  On April 18, 2013, First American filed a motion with this Court, requesting that we accept jurisdiction over this interlocutory appeal.

---

[4] When WM Mortgage filed this motion in August 2012, it began to refer to itself as JPMC Mortgage and filed the motion under the JPMC Mortgage name.  For the sake of consistency and clarity, we will continue to refer to this mortgage foreclosure judgment holder as WM Mortgage.

[5] In its order, the trial court refers to WM Mortgage as JPMC Mortgage.

10

The following day, on April 19, 2013, the Calhouns filed a motion to dismiss in the trial court. In their motion, the Calhouns asserted that they were bona fide purchasers of the Real Estate and that WM Mortgage had failed to serve Gresham, the Auditor, or the Calhouns with any pleadings since WM Mortgage had moved to intervene in the tax sale case. The trial court set a hearing on the motion to dismiss for June 3, 2013.

On May 3, 2013, Burgher filed an appearance on behalf of himself as a party in this Court and a response to First American's interlocutory motion, requesting this Court to deny First American's request to accept jurisdiction. No one entered an appearance on behalf of the Calhouns.

On May 24, 2013, our Court granted the First American's motion to accept jurisdiction over this interlocutory appeal. Thereafter, on June 3, 2013, the trial court vacated the hearing on the Calhouns' motion to dismiss. On June 21, 2013, this Court granted Burgher's motion to withdraw his appearance in this interlocutory appeal. Additional facts will be provided as necessary.

<u>DECISION</u>

First American appeals the trial court's denial of WM Mortgage's motion for summary judgment in this tax deed action.

When reviewing a trial court's order denying summary judgment, we apply the same standard as that used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The moving party "bears

11

the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). "[T]he party seeking summary judgment has the initial burden of proving the absence of a genuine issue of material fact as to an outcome-determinative issue. Only then must the non-movant come forward with contrary evidence demonstrating the existence of genuine factual issues that should be resolved at trial." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010) (citing *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994), *reh'g denied*). When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind. 1999). "Like the trial court, we construe all evidence and resolve all doubts in favor of the non-moving party, so as to avoid improperly denying him his day in court." *Miller v. Dobbs*, 991 N.E.2d 562, 564 (Ind. 2013) (internal citation omitted).

We observe that the Calhouns have not filed an appellate brief in support of the trial court's order granting summary judgment. When an Appellee fails to submit an appellate brief "we need not undertake the burden of developing an argument on the [A]ppellee's behalf." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Instead "we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Santana v. Santana*, 708 N.E.2d

12

886, 887 (Ind. Ct. App. 1999)). When the appellant is unable to meet this burden, we will affirm the trial court's ruling. *Id.*

First American argues that the trial court erred by denying WM Mortgage's[6] summary judgment motion, which requested that Burgher's tax deed be set aside based on a challenge to the sufficiency of the pre-tax sale and post-tax sale notices sent to WM Mortgage. Specifically, First American argues that the trial court should have set aside Burgher's tax deed because: (1) the Auditor failed to provide pre-tax sale notice to the WM Mortgage as required by INDIANA CODE § 6-1.1-24-3(b); and (2) Burgher failed to substantially comply with the notice procedures set forth in INDIANA CODE §§ 6-1.1-25-4.5 and 6-1.1-25-4.6.[7]

Before addressing First American's arguments, we note that the tax sale process is a purely statutory creation and requires material compliance with each step of the applicable statutes, INDIANA CODE §§ 6-1.1-24-1 through -15 (tax sale) and 6-1.1-25-1 through -19 (redemption and tax deed).[8] *Prince v. Marion Cnty. Auditor*, 992 N.E.2d 214, 219-20 (Ind. Ct. App. 2013), *trans. denied*. "If there has been material compliance

---

[6] Again, we recognize that WM Mortgage changed its name to JPMC Mortgage; nevertheless, we will refer to WM Mortgage because it was the named party that filed the summary judgment motion. *See* footnote 4.

[7] On appeal, First American also challenges Burgher's argument made in his motion to dismiss. This motion was filed *after* the trial court's entry of the summary judgment order, and the record on appeal does not show that an order has been issued on this motion. More importantly, the motion to dismiss is not part of the trial court's certified order in this discretionary interlocutory appeal. Thus, we will not review First American's arguments challenging Burgher's motion to dismiss.

[8] The statutes governing tax sales and tax deeds have been amended since the events in this case occurred. Unless otherwise noted, citations to these statutes are to the edition of the Indiana Code in effect at the time of the tax sale.

with each statutory step governing the tax sale process, the trial court can order that the purchaser at the tax sale be granted a tax deed." *Badawi v. Orth*, 955 N.E.2d 849, 852 (Ind. Ct. App. 2011). A tax deed executed under this section "vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances created or suffered before or after the tax sale" with certain exceptions not applicable here. IND. CODE § 6-1.1-25-4.6(g). The issuance of a tax deed by the trial court creates a presumption that a tax sale and all of the statutory steps leading up to the issuance of the tax deed were proper. *Diversified Investments, LLC v. U.S. Bank, NA*, 838 N.E.2d 536, 542 (Ind. Ct. App. 2005), *trans. denied*. However, "this presumption may be rebutted by *affirmative* evidence showing the contrary." *Id.* (Emphasis added). A tax deed may be set aside if the required statutory notices—including INDIANA CODE §§ 6-1.1-24-4 (notice of tax sale sent by county auditor to owner of real estate), 6-1.1-25-4.5 (notice of right of redemption sent by tax sale purchaser to the owner of record and any person with a "substantial property interest of public record"), and 6-1.1-25-4.6 (notice of petition for tax deed sent by tax sale purchaser to the owner of record and any person with a "substantial property interest of public record")—were not in compliance with the requirements set forth in these sections. I.C. § 6-1.1-25-16(7). For purposes of INDIANA CODE §§ 6-1.1-25-4.5 and -4.6, "substantial property interest of public record" is defined as "title to or interest in a tract possessed by a person and recorded in the office of a county recorder or available for public inspection in the office of a circuit court clerk no later than the hour and date the sale is scheduled to commence under this chapter." I.C. § 6-1.1-24-1.9.

14

We now turn to First American's challenges to the pre-tax sale and post-tax sale notices.

1.    Auditor's Pre-Tax Sale Notice

First American argues that the trial court should have granted its summary judgment motion due to the Auditor's failure to send a pre-tax sale notice to WM Mortgage pursuant to INDIANA CODE § 6-1.1-24-3(b).  First American argues that INDIANA CODE § 6-1.1-24-3(b)—the statute providing that a county auditor shall mail a copy of the notice of tax sale to "any mortgagee who annually requests, by certified mail, a copy of notice"—is unconstitutional.

First American's argument is without merit for multiple reasons.  Aside from the fact that our Indiana Supreme Court has already clarified that this statute is "not offensive to the U.S. Constitution[,]" *see M & M Inv. Grp., LLC v. Ahlemeyer Farms, Inc.*, 994 N.E.2d 1108, 1124-25 (Ind. 2013) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)), this statute does not apply to WM Mortgage because WM Mortgage was no longer a mortgagee at the time of the tax sale.  At that time, WM Mortgage had already obtained a mortgage foreclosure judgment against Gresham, and WM Mortgage's foreclosure judgment was a lien against the Real Estate subject to the tax sale.  *See CANA Investments, LLC v. Fansler*, 832 N.E.2d 1103, 1107 (Ind. Ct. App. 2005).  Therefore, WM Mortgage was not entitled to pre-tax sale notice under this statute that specifically pertains to mortgagees.

2.    Burgher's Post-Tax Sale Notice

15

First American next challenges Burgher's post-tax sale notices to WM Mortgage under INDIANA CODE §§ 6-1.1-25-4.5 and 6-1.1-25-4.6. Specifically, First American argues that WM Mortgage's summary judgment motion should have been granted and the tax deed set aside because "Burgher did not substantially comply with Indiana's tax sale statutes with respect to the 4.5 Notice and that his handling of the 4.6 Notice did not provide due process to [WM Mortgage]." (First American's Br. 9).

A. *4.5 Notice*

INDIANA CODE § 6–1.1–25–4.5 governs notices of the right of redemption (or the 4.5 Notice). According to this statute, a person who purchases property at a tax sale must send notice of the sale and of the right of redemption "by certified mail" to: (1) "the owner of record . . . at the last address of the owner for the property, as indicated in the records of the county auditor;" and (2) "any person with a substantial property interest of public record at the address for the person included in the public record that indicates the interest." I.C. § 6-1.1-25-4.5(d).

First American does not dispute that Burgher prepared and sent a 4.5 Notice, but it argues that the 4.5 Notice was insufficient because Burgher and the Calhouns will not be able to prove that Burgher sent the 4.5 Notice to WM Mortgage via certified mail. First American asserts that "[t]he only evidence that Burgher ever attempted to send the 4.5 Notice to anyone is his affidavit testimony that he "mailed" the notice to those parties[,]" and First American contends that "[t]his evidence is insufficient to meet the Calhouns' [previously Burgher's] burden to show that the tax sale noticing was correct." (First American's Br. 7).

16

As discussed above, the issuance of a tax deed by the trial court creates a presumption that a tax sale and all of the statutory steps leading up to the issuance of the tax deed were proper, but "this presumption may be rebutted by affirmative evidence showing the contrary." *Diversified*, 838 N.E.2d at 542. Here, WM Mortgage intervened in the tax deed case and sought to set aside the tax deed. Thus, procedurally, it had the burden to rebut the presumption of the validity or propriety of the tax deed. "Presumptive evidence stands until rebutted. The presumption disappears upon evidence to the contrary." *Lenard v. Adams*, 425 N.E.2d 211, 214 (Ind. Ct. App. 1981). However, WM Mortgage moved for summary judgment, arguing that *Burgher* would not be able prove that he complied with the relevant statutory requirements for the 4.5 Notice and 4.6 Notice. This is not enough to meet its burden on summary judgment. *See Ransburg v. Kirk*, 509 N.E.2d 867, 872 (Ind. Ct. App. 1987) (explaining that the burden of rebutting the presumption regarding the regularity of a tax sale and the validity of a tax deed is on the party challenging the tax deed and that the burden is not on the tax sale purchaser to prove compliance with the tax statutes), *reh'g denied*; *Lenard*, 425 N.E.2d at 214 (holding that a party's allegations that the tax sale and notice statutes were not properly followed failed to rebut the prima facie evidence of the regularity and validity of all tax sale proceedings established by the certificate of sale).

Furthermore, the determination of whether a notice "substantially complied" with the statutory requirements "is a determination based on the facts and circumstances of the case and is a *question of fact*." *In re Sale of Real Prop. with Delinquent Taxes or Special Assessments*, 822 N.E.2d 1063, 1074 (Ind. Ct. App. 2005) (citing *Kiskowski v. O'Hara,*

622 N.E.2d 991, 992 (Ind. Ct. App. 1993), *reh'g denied*, *trans. denied*) (emphasis added), *trans. denied*. Whether the notices substantially complied with the statutory requirements is a material fact on the issue of whether a tax deed should be set aside. As the movant in this summary judgment proceeding, First American had the burden to show that there were no genuine issue of material fact. Here, it is clear that there are questions of fact regarding the post-tax sale 4.5 Notice Burgher sent to WM Mortgage. Accordingly, the trial court did not err by denying WM Mortgage's summary judgment motion. *See, e.g.*, *Haase v. Brousseau*, 514 N.E.2d 1291, 1293 (Ind. Ct. App. 1987) (providing that whether evidence is sufficient to rebut statutory presumption of a husband's paternity is a question for the trier of fact that is not be determined in a summary judgment proceeding).

B.     *4.6 Notice*

Lastly, we address First American's challenge to Burgher's 4.6 Notice. When a property sold at a tax sale is not redeemed during the statutory redemption period, the tax sale purchaser may petition the trial court for issuance of a tax deed pursuant to INDIANA CODE § 6-1.1-25-4.6. The tax sale purchaser must provide "[n]otice of his filing of this petition . . . to the same parties and in the same manner as provided in section 4.5 of this chapter[.]" I.C. § 6-1.1-25-4.6(a). "The notice required by [INDIANA CODE § 6-1.1-25-4.6] is considered sufficient if the notice is sent to the address required by section 4.5(d) of this chapter." *Id.* Under the notice requirements in INDIANA CODE § 6-1.1-25-4.5(d), a tax sale purchaser must provide notice via certified mail to "any person with a substantial property interest of public record *at the address for the person included in the public record that indicates the interest.*" (Emphasis added). "However, if the address of

18

the person with a substantial property interest of public record is not indicated in the public record that created the interest and cannot be located by ordinary means by the person required to give the notice . . . the person may give notice by publication in accordance with IC [§] 5-3-1-4 once each week for three (3) consecutive weeks." I.C. 6-1.1-25-4.5(d). "Only when the record indicating the interest does not include an address is the Auditor required to utilize 'ordinary means' to locate the address of a person with a substantial property interest." *Diversified*, 838 N.E.2d at 542 (citing I.C. § 6–1.1–25–4.5(b)(2)). "The notice required by [INDIANA CODE § 6-1.1-25-4.5] is considered sufficient if the notice is mailed to the address required under subsection (d)." I.C. § 6-1.1-25-4.5(h).

Here, Burgher sent the 4.6 Notice to WM Mortgage "at the address for the person included in the public record that indicates the interest" (i.e., the Rancho Cucamonga, California address contained in WM Mortgage's assignment of mortgage filed with the county). *See* I.C. § 6-1.1-25-4.5(d). Because Burgher's 4.6 Notice was "sent to the address required by section 4.5(d)[,]" this notice would be "considered sufficient" pursuant to the tax deed statutes. *See* I.C. §§ 6-1.1-25-4.5(h); § 6-1.1-25-4.6(a). *See also Diversified*, 838 N.E.2d at 542 (citing *Elizondo v. Read*, 588 N.E.2d 501, 504 (Ind. 1992), *abrogated on other grounds by Jones v. Flowers*, 547 U.S. 220 (2006)) (concluding that an auditor had complied with post-tax sale statutes regarding notice when the auditor used a mortgagee's address contained in the public record and explaining that an "[a]uditor's duty to inform interested parties of tax deed proceedings is confined to the records maintained in the auditor's office").

19

First American acknowledges that Burgher sent 4.6 notice to WM Mortgage via certified mail to the Rancho Cucamonga, California address, which was the address contained in the county records. First American also acknowledges that it had failed to update its address with the county, but it argues that once the 4.6 Notice was returned as undeliverable, then Burgher was "required[,]" by the Due Process Clause of the United States Constitution, to take "other reasonably practical steps to notify [WM Mortgage] of the tax sale, and he failed to do so." (First American's Br. 8). First American asserts that it "certainly could have updated its address in the public records" but contends that "its failure to do so has no effect on the result of this case." (First American's Br. 14, n.6). First American relies on the U.S. Supreme Court's decision in *Jones* for the proposition that "[a] party's ability to take steps to safeguard its own interests does not relieve the State of its constitutional obligation" and to argue that Burgher failed to comply with due process requirements when sending the 4.6 Notice to WM Mortgage. *Jones*, 574 U.S. 232 (quoting *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 799 (1983)).

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *Ind. High Sch. Athletic Ass'n. v. Carlberg*, 694 N.E.2d 222, 241 (Ind. 1997) (citing *Mullane*, 339 U.S. at 313); *Howard v. Incorporated Town of North Judson*, 661 N.E.2d 549, 553 (1996)), *reh'g denied*. Our Indiana Supreme Court has generally discussed the due process requirements that pertain to the government in a tax sale proceeding as follows:

> Prior to the government's taking of a property interest, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

20

action and afford them an opportunity to present their objections.'" *Jones,* 547 U.S. at 226, 126 S.Ct. 1708 (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. 652). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane,* 339 U.S. at 315, 70 S.Ct. 652. Any assessment of the constitutional adequacy of the notice must balance "the interest of the State" against "the individual interest sought to be protected by the Fourteenth Amendment." *Id.* at 314, 70 S.Ct. 652.

*M & M*, 994 N.E.2d at 1119. Because "the attempt to provide notice must be 'reasonably calculated, under *all* the circumstances' in order to be constitutionally sufficient[,]" *Marion Cnty. Auditor v. Sawmill Creek*, *LLC*, 964 N.E.2d 213, 219 (Ind. 2012) (quoting *Mullane*, 339 U.S. at 314 (emphasis added in original), "the review of whether notice efforts satisfied this standard is a fact-intensive process that requires consideration of every relevant fact." *Id.* (citing *Flowers*, 547 U.S. at 227). "Notice is deemed constitutionally adequate when 'the practicalities and peculiarities of the case . . . are reasonably met.'" *Id.* The issue of reasonableness of the notice given turns on the means chosen by the State. *Elizondo*, 588 N.E.2d at 503 (citing *Mullane*, 339 U.S. 306).

"Predicate to any analysis of whether the process provided was fair is a determination that the claimant had a 'protectable interest'—life, liberty, or property—at stake." *Carlberg*, 694 N.E.2d at 241. On summary judgment, the parties did not dispute that WM Mortgage had a protected property interest. Indeed, WM Mortgage had a substantial property interest at stake by virtue of its mortgage foreclosure judgment. *See Cana*, 832 N.E.2d at 1107 (holding that a bank had "a substantial interest in the real estate by virtue of its foreclosure judgment"). *See also M & M*, 994 N.E.2d at 1119 (explaining that a mortgagee, who acquires a lien on the owner's property, has a

substantial property interest to which the Fourteenth Amendment's due process clause applies). WM Mortgage's interest as a mortgage judgment holder would have been a protected property interest subject to due process protection.

Generally, the Fourteenth Amendment protects a protected property interest only from deprivation by state action. *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988). "However, 'when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found.'" *Iemma v. JP Morgan Chase Bank*, 992 N.E.2d 732, 740 (Ind. Ct. App. 2013) (quoting *Tulsa*, 485 U.S. at 486). Here, even assuming that the due process clause applies to a private party/non-governmental entity like Burgher, *see Iemma*, 992 N.E.2d at 740 (reviewing whether a non-governmental corporation's notice complied with the notice requirements of the due process clause without analyzing the issue of whether the due process clause applied to a tax sale purchaser), WM Mortgage (now First American) was not entitled to summary judgment because its reliance on *Jones* is misplaced.

In *Jones*, the U.S. Supreme Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the *property owner* before selling his property, *if it is practicable to do so*." *Jones*, 547 U.S. at 226 (emphases added). "The issue [in *Jones*] was 'whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed.' *M & M*, 994 N.E.2d at 1116-17 (quoting *Jones*, 547 U.S. at 227). However, our Indiana Supreme Court has clarified that the requirement in *Jones*—that the State must take additional steps when a notice of tax sale

22

is returned as unclaimed—specifically applies to pre-tax sale notice sent to property owners, and not to a party with a substantial property interest such as mortgagees. *See M & M*, 994 N.E.2d at 1117-19 (stating that "a mortgagee is not a property owner" and explaining that the "U.S. Supreme Court has always addressed these [due process] cases independently based on the class of interest at stake").

The *M & M* Court has also clarified that the statement from *Jones* upon which First American relies—that a party's ability to take steps to safeguard its interest does not relieve the State of its constitutional obligation—"was not, in fact, a wholesale repudiation of any and all such statutory obligations." *Id.* at 1120. "Instead, the statement refers to the relative sophistication of a party and its ability . . . to 'have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated." *M & M*, 994 N.E.2d at 1120 (quoting *Mennonite*, 462 U.S. at 799). Additionally, the *M & M* Court explained that a party's ability to protect itself is a "factor to be considered when analyzing the 'totality of circumstances' in a due process claim." *M & M*, 994 N.E.2d at 1120 (quoting *Mennonite*, 462 U.S. at 803) (O'Connor, J. dissenting)). The *M & M* Court reviewed the "modern mortgage environment[,]" including the complex system of MERS or Mortgage Electronic Registration Systems and balanced the interests of the State and the interests of the mortgagee class, including the mortgagee's ability to protect its interest in the property at issue by taking steps in order that adequate notice could be sent. The Court held that, "in light of the particular circumstances and conditions relevant to the class and its property interest," a mortgagee was required to provide an address in the public record

23

by filing the proper form with the county in order to obtain a pre-tax sale notice. *Id.* at 1115, 1122-23. The *M & M* Court also explained that "analysis of the sufficiency of notice in a property deprivation matter under the Due Process clause of the Fourteenth Amendment turns on 'the practicalities and peculiarities of the case,' and 'will vary with circumstances and conditions.'" *M & M*, 994 N.E.2d at 1118 (quoting *Elizondo*, 588 N.E.2d at 503).

In this summary judgment proceeding, WM Mortgage (now First American) had the burden of showing that there were no genuine issues of fact regarding the constitutional adequacy of the 4.6 Notice. On appeal, First American contends that it was entitled to summary judgment because Burgher "did absolutely nothing" when the 4.6 Notice sent to WM Mortgage at the California address was returned as undeliverable. (First American's Br. 14). When Burgher responded to WM Mortgage's summary judgment, his designated evidence revealed that he had, among other things, searched the Secretary of State's records, had informed WM Mortgage's attorney in the mortgage foreclosure case, and had requested WM Mortgage's address from WM Mortgage's attorney. We have held that post-tax sale notice to a mortgagee's attorney met due process requirements. *See Iemma*, 992 N.E.2d at 741-42. At the time Burgher mailed the 4.6 Notice to WM Mortgage at its California address contained in the county records in December 2010, WM Mortgage had not updated its name change or its address. Additionally, WM Mortgage was no longer a mortgagee and was instead a mortgage foreclosure judgment holder and a holder of a money judgment against Gresham (the original property owner).

24

The determination of whether the 4.6 Notice was constitutionally adequate from a due process perspective requires the balancing of Burgher's interest as a tax sale purchaser in a state action against WM Mortgage's interest as a mortgage foreclosure judgment holder seeking to be protected by the Fourteenth Amendment. *See M & M*, 994 N.E.2d at 1119. That balancing, however, requires an analysis of the totality of the circumstances and peculiarities of this case, which are disputed and not fully developed. Additionally, an "interest-holder's ability to take reasonable steps to protect his interest [is] a crucial aspect of the balancing test [between the state and individual's interests]." *Diversified*, 838 N.E.2d at 544 (quoting *Elizondo*, 588 N.E.2d at 504). Indeed, we have held that a party with a substantial property interest such as a mortgagee has an obligation to update the official property records to reflect a correct address in order for that party to ensure proper notice. *Diversified*, 838 N.E.2d at 544 (explaining that "the issue of proper notice would have been avoided" if the mortgagee would have ensured that the auditor's records reflected its correct address).

Here, however, it is clear that there are still questions of fact regarding the constitutional adequacy of the 4.6 Notice. There are still questions of fact regarding the balancing of the party's interests and regarding whether Burgher gave notice, under the particular circumstances and peculiarities of this case, in a manner reasonably calculated to inform WM Mortgage of the issuance of the tax deed.[9] Accordingly, we affirm the

---

[9] Although not discussed by First American in its brief, we would note that there is also a potential question of fact regarding whether WM Mortgage was entitled to notice based on its status as money judgment holder against Gresham. Our Court has explained that "'[c]ourts cannot create judgment liens.'" *Hair v. Schellenberger*, 966 N.E.2d 693, 699 (Ind. Ct. App. 2012) (internal quotation marks and citation omitted), *trans. denied*. Judgment liens are "purely statutory" and, as such, "the lien's very

25

trial court's order denying WM Mortgage's (now substituted by First American) motion for summary judgment.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.

---

existence is dependent upon compliance with the statutory requirements." *Hair*, 966 N.E.2d at 699. Furthermore, under INDIANA CODE § 34-55-9-2, "'a money judgment becomes a lien on the debtor's real property when the judgment is recorded in the judgment docket in the county where the realty held by the debtor is located." *ABN AMRO Mortg. Grp., Inc. v. Am. Residential Servs., LLC*, 845 N.E.2d 209, 216 (Ind. Ct. App. 2006) (internal quotation marks and citation omitted). *See also* I.C. § 34-55-9-2 (providing that "[a]ll final judgments for the recovery of money . . . constitute a lien upon real estate . . . in the county where the judgment has been duly entered and indexed in the judgment docket as provided by law . . . after the time the judgment was entered and indexed"). The designated evidence before us contains no information regarding whether WM Mortgage took any actions to comply with this statute in regard to its money judgment.